HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| KRISTA PEOPLES, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA CASUALTY INSURANCE COMPANY,<br><br>                Defendants. | No. 2:18-cv-01173-RSL<br><br>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OF BREACH OF CONTRACT CLAIM AND APPOINTMENT OF CLASS REPRESENTATIVE AND COUNSEL<br><br>Note for Motion Calendar:<br>June 28, 2019 |

## I.    RELIEF REQUESTED

Pursuant to the Court's order granting Plaintiff's Motion to Amend, Dkt. 62, Krista Peoples moves for certification of her Class claim against Defendants United Services Automobile Association and USAA Casualty Company ("USAA") for breach of the Personal Injury Protection ("PIP") provisions of USAA's Washington automobile insurance contract ("contract" or "policy").  Certification is sought pursuant to FRCP 23(a) and (b)(3) on behalf of the following Class:

> All Washington insureds who from September 1, 2015 to July 5, 2018 ("Class Period") had their PIP claims for reimbursement of medical expenses reduced by Defendant USAA based solely on an Explanation of Reimbursement ("EOR") form sent to the insured's provider stating that the bill exceeded a "reasonable amount for the service provided."

See Amended Complaint ("Compl."), Dkt. 64 at ¶78.

---

PLAINTIFF'S MOT. FOR CLASS CERT. - BREACH OF CONTRACT- 1
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Plaintiff also requests that the Court appoint her the class representative and her attorneys as class counsel. She requests that the Court order USAA to produce a list identifying contract claim class members by name and physical and electronic address so class notice can be sent. Rule 23(c)(2)(B).

## II. PERTINENT FACTS

### A. PIP Coverage Under Washington Law

The Washington PIP statute *requires* that insurers offer PIP coverage providing *a minimum* of $10,000 in "medical and hospital benefits." RCW 48.22.005(7). "The statutory requirement to offer PIP coverage implicates public policy." *Sherry v. Fin. Indem. Co.*, 160 Wn.2d 611, 620-21 (2007). The term "medical and hospital benefits" is defined as "*payments* for *all* reasonable and necessary" medical expenses arising from a covered accident. RCW 48.22.005(7) (emphasis added).

The statute's use of the word "payments" means insurers have an affirmative duty to actually make "*payments*" for "*all reasonable*" expenses on a PIP claim.[1] The statute does not define the terms "reasonable" and "all." They are given their dictionary definition. *See Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 11-12 (2018).

"Reasonable" is given a very broad meaning and is not limited to an insurer's definition. *Durant*, 191 Wn.2d at 13-15. The term "all" is defined in the dictionary to mean "*every, all manner, all kinds*."[2] Accordingly, an insurer must actually make "payments" of "every, all manner, all kinds" of "reasonable" expenses on a PIP claim.

This is important here on the class breach of contract claim because insurance policy provisions that are contrary to the Insurance Code or public policy are void and unenforceable. *See Nuygen v. Glendale Constr. Co.*, 56 Wn. App. 196, 203 (1989) (insurance contract 30-day filing limit on insurer's duty to pay claim that was contrary to Insurance Code's requirement of longer claim period was void and unenforceable.)

---

[1] *See Folweiler Chiropractic PS v. Am. Family Ins. Co.*, 5 Wn. App. 2d. 829 (2018), *review denied*, 193 Wn. 2d 1001(2019) (emphasis added).

[2] *See* Am. Heritage College Dictionary 94 at definition 4 (2nd Ed. 1982).

---

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 2
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### B. USAA Charges Insureds a Separate Premium for PIP Coverage

USAA charges a *separate* premium for the insured's *required* $10,000 in PIP benefits. It has taken in hundreds of millions of dollars in PIP premiums from Washington consumers.[3]  As observed in *Sherry*, 160 Wn. 2d at 623:

> Generally speaking, people purchase PIP coverage to cover the immediate costs of an accident, such as medical expenses and loss of income…

So when USAA denies payment of Ms. Peoples's PIP claim and pays her provider less than his/her fee for the service provided, Peoples has "reduced insurance benefits" and has lost the full value of the premium dollar paid for her PIP benefits. *See* Order Consolidating and Certifying Questions, Dkt. 50 at 6.

### C. Peoples's Class Action

Ms. Peoples is a USAA insured. She had "whiplash" injuries from a covered accident when she was "rear-ended." She had PIP coverage and opened a PIP claim. Dkt. 50 at 6. Her providers submitted bills to USAA on her PIP claim. Compl. Dkt. 64 at ¶¶21-27.  USAA denied payment of some provider's bills even though the treatment was reasonable and necessary for her injuries. *Id.* at ¶¶ 28-29.

Some of the bills were denied based on an "RF" reason code set out in the EOR sent to the provider. *Id.* The EOR said full payment was denied because the provider's fee allegedly "exceeded a reasonable amount for the service provided." *Id.* at ¶32. An RF denial means the denial is based solely on the provider's fee exceeding the Milliman 80th percentile amount by more than $9.99 and no other reason.

On threat of a collections action by one of her providers, Peoples paid some of the bills in full that USAA failed to pay due to its Milliman database practice. Peoples Decl., Dkt. 33 at ¶5. Because she did so, she was not given her full $10,000 in PIP benefits.

---

[3] *See* Exhibits to Donckers Decl. In Supp. of Pl.'s Resp. to Defs' Mot. to Dismiss, Dkt. 32-1 at Ex. 3.

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 3
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

On July 9, 2018, Ms. Peoples filed this class action in King County Superior Court on behalf of USAA insureds who from September 1, 2015 to July 5, 2018 had PIP claims denied by USAA based on an EOR that said the amount billed "exceeds a reasonable amount for the services provided." When this phrase appears along with an "RF" reason code as the reason for denying the provider's fee it means that the denial of payment and the lower amount paid by USAA is determined by the Milliman 80th percentile database amount. *See* Order Granting Mot. for Class Certification, Dkt.60 at 1-2.

Ms. Peoples alleged in her Complaint that USAA's practice of making RF denials based solely on its Milliman database threshold violated the PIP statute and WAC 284-30-330. She alleged a *per se* unfair Washington Consumer Protection (WCPA) practice based on these violations and that she sustained injury to her property and damages, including but not limited to, reduced insurance benefits, investigative expenses, and out-of-pocket costs. *See* Dkt. 50 at 6.

After USAA removed of the case to this Court, Peoples moved for certification of her class CPA claim under FRCP 23(a) and (b)(3) and that was granted. Dkt 60. In granting the motion, this Court found the requirements of Rule 23(a) and (b)(3) were met and that Peoples's Class claim raised common, overarching liability issues that would drive the resolution of the action on a class-wide basis.  Dkt. 60 at 3-4, 6-7.

Ms. Peoples then learned additional facts about the Milliman database and that its charge data came from the CMS 5% Medicare sample. Based on this information, she moved for leave to amend the complaint to add a class breach of contract claim. She and the Class allege that USAA should have paid the provider's fee in full when USAA's adjuster did not determine that the fee fell outside the range of fees generally charged by similar providers for the same service in the provider's location.  Instead, USAA paid the Milliman 80th percentile amount. *See* Dkt. 64 at ¶¶102-110, 131-140.

(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

USAA did not oppose Peoples's motion to amend to add an individual breach of contract claim but did oppose adding a class claim.  Dkt. 57. It did not deny that its PIP policy language was the same for all Washington insureds and putative class members who like Ms. Peoples bought PIP coverage. USAA did not deny it had a common and uniform database limitation and practice that it applied to the bills of all Washington insureds. The Court granted Peoples's motion to amend to add an individual and class claim. It ordered Peoples to file her motion for class certification of the claim by June 7.

### D.   USAA's Washington PIP Policy Provisions and Breach

USAA sold Peoples PIP protection in her auto policy that says: "**We** (USAA) will pay the following PIP benefits…(1) **Medical and hospital benefits**."[4]

It also states: "M**edical and hospital benefits** means **the medical payment fee** for **medically necessary and appropriate medical services**…" *Id*.

The policy then states:

> **Medical payment fee** is an amount determined by us or someone on our behalf that we will pay for charges made by a… licensed medical provider for "**medically necessary and appropriate medical services.** The amount that we will pay will be one of the following:
>
> 1. The amount provided in an applicable (PPO) or other similar agreement; or
>
> 2. The amount (set by a state or governmental) fee schedule…; or
>
> 3. The amount negotiated with the provider; or
>
> 4. The lesser of the following:
>
>    a. The actual amount billed; or
>
>    b. A reasonable fee for the service provided. A fee is reasonable if it falls within the range of fees generally charged for that service in the geographic area.[5]

Under the policy then, USAA undertook three promises to the insured:

(1) USAA promised to determine itself or have someone else determine for it the amount it will pay for medical services;

---

[4] *See* Donckers Decl., Dkt. 54-1 at p. 9 of 28 of the policy (emphasis in original).
[5] *See* Dkt. 54-1 at p. 8 of 28 of the policy (emphasis in original).

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 5
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

(2) USAA promised to make the determination by reference to either a PPO rate, government fee schedule, negotiated rate with the provider, or the lesser of two options: (a) the actual amount billed by the provider; or (b) a fee that "falls within the range of fees generally charged for that service in the geographic area."

(3) USAA promised to pay the amount determined in the above manner.

### 1. USAA's Breach by Trying to Enforce a Void PIP Policy Provision

On its face, USAA's policy does not comply with the plain language of the PIP statute that requires that USAA make payments of "all" reasonable fees, i.e. "all manner, all kinds" of reasonable fees. Instead, USAA's policy says it will only pay the subset of "reasonable fees" that are the lesser of the amount billed or fees that fall within the range of fees generally charged for the service in the geographic area."

Because limitations in a policy on the insurer's duty to pay claims that conflict with the Washington Insurance Code are void and unenforceable, USAA cannot limit its duty to pay the "medical and hospital benefits" required by the PIP statute to only paying a small subset of what it unilaterally describes as a "reasonable fee." It has to pay "every, all manner, all kinds" of reasonable fees and the determination of whether an amount is a reasonable fee for that provider to bill for his/her services must be based on an individualized assessment. *See Folweiler*, 5 Wn. App.2d at 839.

Where, as here, there is no PPO, government fee schedule, or negotiated fee for the provider's service, under USAA's contract, it has only two options: it has to pay either "the actual amount billed," or the provider's fee if it falls within the range of fees generally charged in the area. Since limiting its duty to pay "*all* reasonable" fees to only fees that are generally charged in the area for the service is void and unenforceable under the PIP statute, USAA only has one option, it must pay "the actual amount billed."

It is an undisputed fact that USAA did not do that for all charges at issue for which USAA denied payment based solely on an RF reason code and its Milliman

database practice. Instead, it denied or limited its payment based on its Milliman database threshold.[6]

USAA breached its PIP policy on all class member bills at issue by limiting and denying payments based on a contract provision that was contrary to the PIP statute, against public policy and unenforceable through the use of its database practice. In other words, it is not just that USAA engaged in a *per se* unfair Washington Consumer Protection Act practice by denying and limiting its payment using its database practice that contravened the PIP statute and WAC regulations, it also breached its PIP policy.

### 2.   USAA's Breach by Failing to Comply with Contract as Written

The class claims, as noted, are not governed by a PPO rate, state regulated rate or negotiated rate with the provider. So under subsection 4(a) and (b) of the PIP policy, USAA has only two payment options: pay the actual amount billed or the provider's fee if it falls within the range of fees generally charged in the same area for the same procedure. But this language must be interpreted to determine if USAA breached the contract because the terms are ambiguous. For example, what the terms "range of fees," "generally charged" and "geographic area" mean in subpart (b) is unclear.

It is however a common rule of Washington contract law that ambiguous terms in an insurance contract are construed most favorably for the insured and in favor of coverage and against the insurer and denial of coverage. *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 183 Wn.2d 485, 491 (2015) (It is "Hornbook law that where a clause in an insurance policy is ambiguous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning.") (internal citations omitted).

This general rule of law applies to the contract claim of all class members because they are all USAA insureds. The PIP contract will be construed the same way for each class member and when the terms in section 4(b) of the policy are construed

---

[6] *See* Order Granting Mot. for Class Certification, Dkt. 60 at 1-2.

most favorably for the insured and coverage, USAA's duty to pay "all reasonable" medical expenses on a PIP claim is to pay all fees submitted by a provider if the fee "falls within the range of fees generally charged" by similar providers in the provider's location. Because USAA does not do so, it breached the policy as written.

As Ms. Peoples alleged and USAA admitted, it has a uniform practice of denying and limiting payments based on its use of the 80th percentile of charges in the Milliman database of provider charges. USAA admitted in deposition testimony through its designated representative, Joley Day-Mayfield, that when an insured or the provider submits a bill for a treatment service, the bill is sent to USAA's third-party bill review Auto Injury Solutions ("AIS") for processing. In the bill, the treatment service is defined by a CPT procedure number and each unit of that procedure is billed at the provider's fee for that service. This information is inputted into AIS's computer system.

The computer system automatically compares the fee billed by the provider for the CPT procedure with the amount represented by the 80th percentile of charges in the Milliman database of charges for the same procedure. If the provider's fee is more than $9.99 above the Milliman 80th percentile amount, the computer automatically denies payment and sets the reimbursement amount at the 80th percentile amount. The computer then creates a draft Explanation of Reimbursement ("EOR") that sets out the reason for the reduced payments as an "RF" reason code. The draft EOR then comes up on USAA adjuster's computer screen. The adjusters are located at USAA's headquarters in San Antonio. In deposition, the adjusters have uniformly testified that they do not know what "the going rate" or average charge is for any CPT procedure billed by Washington providers in any area of Washington.[7]

The adjusters have no idea whether a Washington provider's bill represents a fee that falls within the range of fees generally charged by similar providers. *Id.* No

---

[7] *See* Exhibits 6-9 to Donckers Decl., Dkt. 32-2 (excerpts of deposition testimony from USAA adjustors Morales, McDaniel, and Benitez, and USAA claims manager Whitehead).

determination is made by the adjuster that the provider's fee is unreasonable or falls outside the range of fees generally charged by similar providers in the same location. Instead, the adjuster relies solely on the Milliman database amount and sends the provider a reduced check at that amount. *See* Donckers Decl. in Support of Mot. for Class Certification at **Ex. 1** at pp. 28-29 (testimony from deposition of USAA adjustor John Austin Morales) and **Ex. 2** at pp. 19-20 (testimony from adjustor / claims manager Frankie Benitez).

USAA's database practice was applied to the PIP claims of every Washington insured on every bill. This fact is confirmed in USAA's testimony through Day-Mayfield and representative testimony from USAA adjusters and claims managers. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("Since *Dukes* and *Comcast* were issued, circuit courts including this one have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages.")

USAA's Milliman database practice is also set out in USAA documents and the testimony of AIS through its representative and vice-president, Tina Sentfle.[8] At this point, the facts relating to USAA's practices and its uniform application to all PIP claims submitted by all class members are *undisputed.*

In addition, Mayfield has testified and USAA's documents show that Milliman gets its charge data from the CMS 5% Medicare patient sample. Through discovery in another case against USAA, Plaintiff learned that the CMS data does not and cannot ensure that the 80th percentile of charges reflects the *entire* range of fees charged in any geographic area of Washington let alone the fees *generally* charged in the billing provider's *location* by *similar* providers with similar backgrounds, years of experience or credentials.[9] Rather, the CMS data is a small sample of Medicare enrollees *nationwide*,

---

[8] *See* Ex. 10 to Donckers Decl., Dkt. 32-2 (excerpts from deposition transcript).
[9] The case was brought against USAA in Montana under Montana state law, *Byorth v. USAA Casualty Ins. Co.*, Case No. 1:17-cv-00153-SPW-TJC (D.Mon.).

i.e. patients over 65 who live anywhere in the country and submit bills to Medicare. Indeed, Plaintiff's expert has submitted a declaration showing why the CMS 5% sample utilized by Milliman is not statistically valid.  Ott Decl., Dkt. No. 43 at ¶¶1-20.

This means that the charges in the Milliman database that are used to make the comparison with the Washington billing provider's fee are simply the charges that were billed by providers for treating a Medicare patient for the same CPT treatment service. The charge could come from a different area of Washington than the billing provider's location or from some other area in the country altogether because the CMS charges are based on the *patient's* address – the provider's address is not included. The CMS data Milliman uses does not necessarily say anything about what Washington providers charge in the billing provider's location. Nor is there any known correlation between the CMS sample and the total number of *all* charges by *all* providers submitted to *all* payers in the same geographic area for the same CPT procedure.  There could be "0" charges in the CMS sample for a specific CPT treatment service in a specific geographic area.

But even if the CMS data has 40 or 400 charges for a treatment procedure from a Washington area, it is impossible to tell from the CMS data if those 40 or 400 charges were submitted to Medicare by only 5 providers who saw the same Medicare patient 8 times or 80 times and hence represents the charges of only 5 providers in the area for the same CPT procedure. It is also impossible to tell if the data represents 40 providers out of a total of 400 providers in the area who charged Medicare, or a health insurer, or an auto insurer or the state workers compensation program for the same procedure, i.e. the fee charged in the area by only 10% of the providers. The CMS data is simply not broken down by provider so it cannot give the user of the data the entire "range of fees *generally* charged" by *all* providers in any area.

Nor is the Medicare data organized by the specific city or location where the service was provided. It is impossible to determine from the CMS data if the charges represent what providers charge in the billing provider's location or a broader area.

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 10
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Nor does Medicare collect information on providers or organize data based on similar providers with the same years of experience, or credentials or any other individual characteristic. So, it is impossible to tell the range of fees *generally charged by similar providers* in the area from the CMS charge data that Milliman uses. Indeed, when there is insufficient CMS charge data for even the broad geographic areas the Milliman database uses to make the comparison with Washington provider fees, Milliman will use a formula that relies on fees charged for the same CPT procedure from *other states* and then extrapolates those fees to get Washington fees for the procedure.

Accordingly, USAA's PIP claims practice that relies solely and exclusively on the Milliman database threshold to pay provider fees does not and cannot comply with the promises USAA made in its PIP policy. USAA promised to make a determination of the amount it would pay based on the range of fees generally charged in the same location for the same service by similar providers when not paying the actual amount billed. But if the CMS data Milliman uses does not and cannot determine the full range of fees generally charged in the billing provider's location by similar providers with similar backgrounds, then USAA breached its promise to make such a determination.

And because USAA is unable to determine the range of fees generally charged by similar providers in the same location by relying solely on the Milliman database, under its PIP policy language it only has one other option, i.e. it has to pay the actual amount billed. It is an undisputed fact for all class members that USAA did not pay the amount billed on the charges at issue. It paid the Milliman 80th percentile amount.

Accordingly, USAA's liability on each class member's claim is based on the same undisputed facts relating to USAA's database practice and the facts relating to the limitations of the Milliman database that are established by deposition testimony and USAA and Milliman documents. USAA's breach is not dependent on whether the provider's fee does or does not in fact fall in the range of fees generally charged for the

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 11
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

same treatment in the provider's location because USAA promised to make such a determination in the first place and cannot do so. Therefore USAA only had the option to pay the actual amount billed and did not in breach of the PIP policy language.

### III.  LEGAL AUTHORITY

#### A.  Legal Standard for Certification under Rule 23

In *Durant v. State Farm Mut. Auto Ins. Co.*, 2017 U.S. Dist. LEXIS 34157 (W.D. Wash. Mar. 9, 2017), the Court discusses the requirements of Rule 23(a) and (b)(3) at *6-7. This Court similarly discussed these requirements in granting certification of People's class CPA claim. Dkt. 60 at 2-8.

In this motion, Plaintiff Peoples seeks certification of the Class contract claim on behalf of the following class of USAA insureds under Rule 23(a) and (b)(3):

> All Washington insureds who from September 1, 2015 to July 5, 2018 ("Class Period") had their PIP claims for reimbursement of medical expenses reduced by Defendant USAA based solely on an Explanation of Reimbursement ("EOR") from sent to the insured's provider stating that the bill exceeded a "reasonable amount for the service provided.

*See* Compl., Dkt. 64 at ¶78.

As discussed above, a denial of full payment based on the phrase in the EOR that the billed amount "exceeds a reasonable amount for the service provided" will be shown in the EOR anytime the letters "RF" are in the "Reason Code" column of the EOR. For that reason, the members of the Class are clearly identifiable from USAA's business records, *i.e.*, the EORs. *See Durant,* 2017 LEXIS 34157 at *9-10.

The proposed contract Class is the same class certified by the Court on the WCPA claim. Accordingly, Plaintiff provides a more limited discussion of Rule 23 below.

#### a.  Rule 23(a)(1) Numerosity:

Plaintiff's Complaint alleges that there are at least 1,100 Washington insureds whose bills were denied and reduced by USAA "using the same common practices and procedures that were applied to bills submitted by Ms. Peoples and reduced based

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 12
(No. 2:18-cv-01173-RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

solely and exclusively on an automated computerized review of bills" by AIS. *See* Compl., Dkt. 64. at ¶61. USAA does not dispute this fact and the Court previously found that joinder of individual class members was impracticable. Dkt. 60 at 3. The "numerosity" requirement is met. *See, e.g. Durant*, 2017 LEXIS 34157 at *10.

### b. Rule 23(a)(2) Commonality:

The class contract claim satisfies "the commonality requirement of Rule 23(a) because [she] alleges that [USAA] engaged in the same conduct for each class member by denying claims based on the [Milliman 80th percentile] standard." *See Durant, supra* at *10. The common facts supporting the contract claim are not in dispute:

(1)  USAA's PIP contract language is the same for all class members.

(2)  USAA admits it has a practice of making automatic, computer generated denials using a Milliman database threshold.

(3)  USAA admits it applies the practice to all Washington PIP claims.

(4)  USAA admits and Milliman confirms that Milliman data used for all PIP claims in Washington is from the CMS 5% Medicare sample.

(5) The characteristics and limitations of the 5% CMS sample are the same for all charges, i.e. the sample relates to 5% of Medicare patients nationwide, the charges are only those charges relating to those patients, the charges are not collected or organized by providers, or by similar providers or by specific location.

The following liability issues are common on Plaintiff's breach of contract claim:

(1) Is USAA's contract provision consistent with the PIP statute's requirement and if not, is it void and unenforceable?

(2) Is the language of the PIP policy ambiguous?

(3) If so, how should the contract language of the PIP provision be construed and under Washington law should it be construed in favor of coverage?

(4) Does USAA make the policy's required "medical payment fee" determination?

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 13
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

(5) Is USAA required to pay the provider's actual fee under the contract if the USAA adjuster could not determine that the provider's fee fell outside the entire range of fees generally charged in the area for the same service by similar providers when relying solely on USAA's Milliman database threshold?

(6) Did USAA breach the contract when its adjusters did not determine that the provider's fee fell outside range of fees generally charged by similar providers for the same service in the provider's location and instead paid the computer generated fee at the Milliman 80th percentile amount?

The above liability issues can and should be resolved on a class-wide basis because the answer to each of these issues will be the same for each Washington insured and putative class member. USAA's liability will be based on a judicial determination of the contract language or barring that on the jury's determination. In either case, the language will be construed in the same way for all class members for all bills USAA did not pay using its Milliman database threshold.

Liability for breach of the PIP policy will also be established by use of common proof. First, the USAA and Milliman documents produced, as well as the testimony of USAA, AIS and Milliman establish the common RF practice and the alleged limitations of the Milliman database. Second, representative testimony of USAA adjusters and managers show the common practice of paying providers based solely on the Milliman 80th percentile amount without any determination that the provider's fee falls outside the fees generally charged in the location by similar Washington providers. This evidence is "acceptable" for establishing liability. *See Jimenez, supra* at 1167.

Resolution of the common liability issues concerning USAA's alleged breach of its obligations under the PIP policy language will drive the resolution of the contract claim. "Commonality" under Rule 23(a)(2) is met. *See, e.g., Durant*, 2017 U.S. Dist. LEXIS 34157 at *11.

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 14
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### c. Rule 23(a)(3) Typicality:

As Judge Jones explained in *Durant* at *11 (internal citation omitted):

> The test of typicality is whether other members have the same or similar type of injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."

Plaintiff Peoples satisfies the typicality requirement because the course of conduct leading to her alleged injury - that USAA denied payment of her PIP claims based on the Milliman 80th percentile standard - is the same for all potential class members. *Durant, supra* at *11-12. Notably, the "typicality" requirement refers to the nature of the claim, or defense to the claim of the class representative, and not to the specific facts from which it arose or the relief sought. *Durant, supra* at 12 (*citing Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

Ms. Peoples's contract claim is based on the same three legal theories as the members of the Class, *i.e.*, (1) USAA's practice of making automatic computer generated denials of PIP claims using the Milliman 80th percentile standard as the sole and exclusive means to deny payment is contrary to the PIP statute and renders its contract limiting its payments void and unenforceable; (2) USAA does not and cannot make the determination required by the contract because it relies solely on the Milliman database threshold; and (3) it has no option other than paying the actual amount billed when that determination is not made and breached the contract by not paying the actual amount billed by the provider as his/her fee for service.

### d. Rule 23(a)(4) Adequacy of Representation:

As Judge Jones explained in *Durant, supra* at *13-14 (internal citation omitted):

> To determine whether the adequacy requirement is met, courts may be guided by two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'

Ms. Peoples and her counsel have no conflicts with the interest of other class members. They have the same interest as the USAA insureds who are class members, i.e., proving that USAA cannot make automatic computer-generated denials and reductions to health care provider bills in violation of the PIP policy provisions. When USAA does so it does not provide the full PIP benefits purchased by the insured.

This Court previously found Ms. Peoples and her counsel were adequate representatives of the class. Dkt. 60 at 5. There are no facts particular to the contract claim that would lead to a different finding under Rule 23(a)(4). Peoples respectfully requests that she be appointed class representative and that her attorneys be appointed class counsel on the class breach of contract claim.

**1.    Rule 23(b)(3)**

**a)    Predominance:**

As Judge Jones explained in *Durant* at *14 (internal citation omitted):

> To meet the predominance requirement, common questions of law and fact must be a 'significant aspect of the case… [that] can be resolved for all members of the class in a single adjudication.

As discussed above, Plaintiff Peoples' breach of contract claim raises common overarching liability issues relating to whether USAA's contract complies with Washington law, how the contract language should be interpreted and whether given the interpretation of its terms, USAA breached the promises undertaken in exchange for the insured's separate PIP premium. Resolution of these common issues will determine whether USAA is liable to the class members on the breach of contract claim. Indeed the issues overlap with the certified class CPA claim in significant part because both claims reference the requirements of the PIP statute, the strong Washington public policy favoring full PIP benefits and are based on the same Milliman database practice.

Like the class CPA claim, USAA's liability on the class contract claim can be resolved based on common evidence establishing the existence of USAA's practice, its

application to the bills of all class members, and the resulting denials and limited payments. As in *Durant*, USAA's business records show the denials at issue and identify the insureds subject to USAA's practice. The records and EORs show the resulting underpayments and hence the harm caused to insureds by USAA's practice.

Unlike *Durant* though, damages can be calculated from the face of the EORs that state the amount billed, the amount paid, the difference – *i.e.*, the amount of underpayment – and the reason, an "RF" reason code. In *Durant*, there were multiple reason codes that potentially required an examination of the claims file on an individual basis to determine the class member's damages.

Even so, as Judge Jones explains in *Durant, supra* at *15 (internal citation omitted):

> Despite the possible individualized nature of damages calculations … '[c]lasswide resolution of the common issues is superior to the filing of multiple and duplicative lawsuits and will result in the efficient and consistent resolution of overarching question.

The same is true of Peoples's class claim that involves resolving the same questions relating to USAA's practice and will avoid multiple and duplicative suits in which the same questions would be have to be resolved to determine USAA's liability.

    **b)**    **Superiority:**

The superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. *Durant*, 2017 LEXIS 34157 at *16 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (1998)). Rule 23(b)(3) provides an non-exhaustive list of factors relevant to the superiority analysis. *Id.* These factors are established here. First, class members have little interest in individually controlling their individual claims because they are so small, only around $200 on average. Fed. R. Civ. P. 23(b)(3)(A).

Second, there have been similar class actions attacking USAA's practice of making automatic computer-generated denials. Rule 23(b)(3)(B). Discovery in those cases has established the existence of the practice at issue and USAA's failure to

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 17
(No. 2:18-cv-01173-RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

comply with the PIP statute and WAC requirements. For example, the existence of the Milliman 80th percentile practice has already been established by the deposition of USAA in other cases through USAA's 30(b)(6) representative.[10] Similarly, the fact that USAA relies solely on this practice whenever the EOR has an RF reason code and does not determine that amounts that exceed its Milliman 80th percentile standard are unreasonable is also established by USAA's deposition from other cases. *Id.* at Dkt. 10 at Ex. 7. A number of USAA adjusters and managers who process Washington PIP claims have also been deposed in the prior *MySpine* case. They have admitted that they do not know how the AIS computer sets the reimbursement amount on the EOR when an "RF" denial and reduction are made and do not investigate the reasonableness of the bill.[11]

Third, it is highly desirable to concentrate the litigation in a single forum. Rule 23(b)(3)(C). As in *Durant*, "if the class members were forced to bring individual claims for relatively small amounts of damages, then many members would most likely refrain after realizing 'the disparity between their litigation costs and what they hope to recover.'" 2017 U.S. Dist. LEXIS 34157 at *17.

Fourth, Ms. Peoples's class action is "manageable" because class members and their claims can be identified from the insurer's business records. Rule 23(b)(3)(D); *Durant*, *supra* at *16. In addition, as noted, the same proof will be offered to establish the existence of the disputed practice.

Based on the same considerations and focusing specifically on the alternative to class resolution of USAA's liability on the class CPA claim of thousands of individual cases adjudicating small individual claims in the hundreds to thousands of dollars, this Court found that class adjudication of the CPA claim was superior to other methods of

---

[10] *See* Donckers Decl., Dkt. 10 at Ex. 7 (excerpt of deposition of Rule 30(b)(6) representative of USAA).
[11] *See* Exhibits 6-9 to Donckers Decl., Dkt. 32-2 (excerpts of deposition testimony from USAA adjustors Morales, McDaniel, and Benitez and USAA claims manager Whitehead).

PLAINTIFF'S MOT. FOR CLASS CERT. -
BREACH OF CONTRACT- 18
(No. 2:18-cv-01173-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

adjudicating the claim. Dkt. 60 at 9. The same considerations favor class adjudication of the contract claim as superior to other forms of adjudication.

### IV. CONCLUSION

For the reasons set forth above, Class certification of the class breach of contract claim under Rule 23(a) and (b)(3) is appropriate and Plaintiff's motion should be granted and her counsel appointed class counsel.

DATED:  June 6, 2019.

BRESKIN JOHNSON TOWNSEND, PLLC

By: *s/Brendan W. Donckers*
David E. Breskin, WSBA #10607
Brendan W. Donckers, WSBA #39406
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206)652-8660
dbreskin@bjtlegal.com
bdonckers@bjtlegal.com

WASHINGTON INJURY LAWYERS PLLC

By: *s/Young-Ji Ham*
Young-Ji Ham, WSBA #46421
1001 Fourth Ave., Ste. 3200
Seattle, WA  98154
Tel: (425) 312-3057
youngji@washinjurylaw.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this date I filed the foregoing document with the Clerk of the Court using the court's ECF filing system which will automatically serve the filing on all registered ECF users.

DATED June 6, 2019, at Seattle, Washington.

*s/Nerissa Tigner*
Nerissa Tigner, Paralegal